**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

**JOSHUA J. RUFFIN and**
**QUENTEZ R. RUFFIN,**

      **Plaintiffs,**                    **CASE NO. 4:11cv344-RH/WCS**

**v.**

**CITY OF TALLAHASSEE, DOUGLAS**
**CLARK, individually, and IPC**
**INTERNATIONAL CORPORATION,**

      **Defendants.**
_____/

**PLAINTIFFS' RESPONSE AND MEMORANDUM OF LAW IN OPPOSITION**
**TO DEFENDANTS' CLARK AND CITY'S MOTION TO DISMISS COUNTS III,**
**IV, AND V OF PLAINTIFFS' AMENDED COMPLAINT**

      Plaintiffs, JOSHUA J. RUFFIN and QUENTEZ R. RUFFIN, by and through their

counsel, file this their Response to Defendants' Clark and City's Motion to Dismiss

Counts III, IV, and V of Plaintiffs' Amended Complaint and state the following in

support:

**I.  INTRODUCTION**

      Plaintiffs filed a nine-count Amended Complaint against Defendants City of

Tallahassee ("COT" or "City"), Douglas Clark ("Clark"), and IPC International

Corporation ("IPC").  Defendants Clark and COT move to dismiss Counts III, IV, and V.

Count III alleges excessive force and false imprisonment against Clark and COT pursuant

to 42 U.S.C. §1983.  Count IV alleges a state common law action against COT for false imprisonment/false arrest.  Count V alleges a state common law action against Clark for false imprisonment/false arrest.

Defendants Clark and City, on pages 7-8 of their Motion [Doc 9], state that "plaintiff's factual allegations do not plausibly show that Officer Clark violated a constitutional right."  However, Clark only addresses the false arrest, not the Plaintiffs' excessive force, claim in his Motion.  The City, however, claims it has no liability for both the false arrest and excessive force claims in Count III.  Plaintiff have addressed the excessive force claim below even though it does not appear to have been argued by Defendant Clark  in the Motion to Dismiss.

Additionally, Counts IV and V are claims for false arrest under the common law of the State of Florida- they are not pled as constitutional violations.  Because Clark and the City have not addressed these counts, perhaps under the mistaken impression that they, too, like Count III, contained constitutional claims, Plaintiffs have not discussed their claims in Counts IV and V.

## II.  LEGAL STANDARD

The Amended Complaint is sufficient to meet federal pleading standards articulated in Ashcroft v. Iqbal, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009).  "Federal Rule of Civil Procedure 8(a)(2) requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief.'"  Erickson v. Pardus, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007).  "[W]e do not require heightened fact pleading of specifics, but

only enough facts to state a claim to relief that is plausible on its face." <u>Bell Atlantic Corp. v. Twombly</u>, 127 S.Ct. 1955, 1974 (2007).  However, "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" must be pled.  <u>Ashcroft</u>, 129 S. Ct. 1937.  Though the standard requires more than a "sheer possibility" of actionable conduct, it is also not a "probability requirement" that unlawful conduct took place.  <u>Id.</u> at 1949.

### III.  CLARK IS NOT ENTITLED TO QUALIFIED IMMUNITY ON THE EXCESSIVE FORCE CLAIM

Defendant Clark is entitled to qualified immunity from Plaintiffs' claims only if he establishes (1) that no constitutional right was violated and (2) that the right was not clearly established at the time of the conduct in question. <u>Saucier v. Katz</u>, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).  To determine whether Defendant Clark's amount of force used on Plaintiffs was proper, the court must ask "whether a reasonable officer would believe that this level of force is necessary in the situation at hand." <u>Willingham v. Loughnan</u>, 261 F.3d 1178, 1186 (11th Cir. 2001).  The Eleventh Circuit determines the reasonableness of force by examining (1) the need of the application of force, (2) the relationship between the need and amount of force used, and (3) the extent of the injury inflicted. <u>Leslie v. Ingram</u>, 786 F.2d 1533, 1536 (11th Cir. 1986).  The "reasonableness" of the force is judged using an objective standard under the totality of the circumstances, without regard to the officers' underlying intent.  <u>Graham v. Connor</u>, 490 U.S. 386, 389, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443 (1989).

It was objectively unreasonable for Clark to use violent force on Plaintiffs, who posed no physical threat and complied with his requests. See Hadley v. Gutierrez, 526 F.3d 1324, 1330 (11ᵗʰ Cir. 2008)(denying officer qualified immunity where officer struck suspect once in the stomach even though suspect did not resist arrest, disregarding any of officer's subjective belief of danger).  It is disingenuous for Clark to claim that Plaintiffs' pleadings could not plausibly entitle them to relief from his excessive force.  Joshua Ruffin alleged that Defendant Clark kicked him in the leg when he dared ask the officer a question.  Quentez Ruffin alleged that Clark tased him four times when he also dared to open his mouth.  Clark had no lawful basis to kick or tase either Plaintiff.  There is hardly a question that Plaintiffs adequately pled violations of their right to be free from excessive force.  See Sheth v. Webster, 145 F. 3d 1231, 1238 (11ᵗʰ Cir. 1998)("the district court was likewise correct in holding that Webster was not entitled to qualified immunity on plaintiff's excessive force claim.  Under plaintiff's allegations, Webster pushed her against a soda machine, handcuffed her, and dragged her to the police car.  There is no evidence in the record to suggest that plaintiff posed a danger to the officer or others.  Accordingly, because of the absence of any justification for Webster's use of force, application of the Fourth Amendment reasonableness standard 'would inevitably lead every reasonable officer . . . to conclude that the force was unlawful.'"); see also Post v. City of Fort Lauderdale, 7 F. 3d 1552, 1559 (11ᵗʰ Cir. 1993).

4

## IV.  CLARK HAD NO PROBABLE CAUSE TO CONTINUALLY DETAIN PLAINTIFFS

Defendant Clark is also not entitled to qualified immunity with respect to Plaintiffs' false imprisonment claim.  Even assuming, *arguendo*, that Clark had arguable probable cause to initially detain the Plaintiffs, he certainly did not have ongoing cause to continually detain Plaintiffs and arrest Quentez Ruffin.  A claim for false arrest under Florida law is viable where the officer continues to detain a suspect after his suspicions have been eased.  E.g. Jessup v. Miami Dade-County, 2011 WL 3861690 at *3 (11th Cir. 2011)(denying summary judgment on false imprisonment claim where officers' initial reasonable suspicion of a crime vanished over time, thus no lawful basis persisted for the continued detention); Croom v. Balkwill, 645 F.3d 1240, 1251 n.15 (11th Cir. 2011) (noting that investigative stops must "cease one law enforcement's reasonable, articulable suspicions of [detainee are] allayed").

Because Clark lacked arguable probable cause to continue his seizure of Plaintiffs, they have sufficiently alleged a violation of their right to be free from unlawful detention. As pled, Clark himself escalated a benign situation to contrive allegations against Plaintiffs to justify pinning an ambiguous disorderly conduct or resisting arrest charge on these youths.

Plaintiffs' pleadings do not state any facts to indicate that either Plaintiff committed a crime in Clark's presence.  Plaintiffs' words could not have constituted arguable criminal obstruction or resistance.  "As we all know, [t]he freedom of

5

individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." L.A.T. v. State, 650 So.2d 214, 217 (Fla. 3d DCA 1995), quoting City of Houston v. Hill, 482 U.S. 451, 462-63, 107 S.Ct. 2502, 2510, 96 L.Ed.2d 398, 412-13 (1987).

Clark cannot earn qualified immunity through his willful blindness to the facts in an overzealous attempt to arrest someone.  A qualified immunity analysis charges the officer with "possession of all the information reasonably discoverable by an officer acting reasonably under the circumstances." Sevigny v. Dicksey, 846 F.2d 953, 957 n.5 (4th Cir. 1988).  "A police officer may not close his or her eyes to facts that would help clarify the circumstances of an arrest." BeVier v. Hucal, 806 F.2d 123, 128 (7th Cir. 1986).  Clark continued to detain Plaintiffs without even a modicum of arguable probable cause.  They have thus stated claims for false arrest/imprisonment.

## V.  THE UNLAWFULNESS OF PLAINTIFFS' ARREST/DETENTION WAS CLEARLY ESTABLISHED UNDER THESE FACTS

"There is no question that an arrest without probable cause to believe a crime has been committed violates the Fourth Amendment."  Madiwale v. Savaiko, 117 F.3d 1321 (11th Cir. 1997) (citing Von Stein v. Brescher, 904 F.2d 572, 579 (11th Cir. 1990); Herren v. Bowyer, 850 F.2d 1543 (11th Cir. 1988).  When a defendant officer makes deliberately false statements to support a false arrest, there is a clear violation of a plaintiff's constitutional rights.  See Holmes v. Kucynda, 321 F.3d 1069 (11th Cir. 2003)(court held that qualified immunity "does not offer protection if an official knew or reasonably

6

should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the plaintiff).

Defendant's argument wrongfully presupposes that - as a matter of law - he had probable cause to arrest Plaintiffs.  He did not.  Even if either Plaintiff had opposed Clark's lawful commands - which they did not - Plaintiffs' "resistance" was not the sort Florida courts deem unlawful under § 843.02, Florida Statutes (resisting arrest without violence), or any Florida statute.  A person is privileged to resist peacefully an unlawful arrest.  E.g. Lee v. State, 368 So.2d 395 (Fla. 3d DCA 1979), *cert. denied* 378 So.2d 349 (Fla. 1979).  Physical conduct must usually accompany offensive words to support a conviction under § 843.02.  Francis v. State, 736 So.2d 97, 99 (Fla. 4th DCA 1999).  Defendant Clark could not reasonably have thought that either Plaintiff's actions constituted obstruction of his performance of a legal duty.  D.G. v. State, 661 So.2d 75 (Fla. 2d DCA 1995).

A reasonable officer would understand Plaintiffs' words to be constitutionally protected speech.  See W.L. v. State, 769 So.2d 1132, 1133 (Fla. 3d DCA 2000) (reversing on First Amendment grounds juvenile's adjudicated delinquency when juvenile yelled series of profanities at officers but did not physically interfere or physically threaten the officers).  As the court explained in Wilkerson v. State: "We have no doubt that the use of 'oppose' in conjunction with 'obstruct' manifests a clear and unambiguous legislative intent to proscribe only acts or conduct that operate to physically oppose an officer in the performance of lawful duties." 556 So.2d 453, 455-56 (Fla. 1st

DCA 1990); see also State v. Dennis, 684 So.2d 848, 849 (Fla. 3d DCA 1996) (holding

police did not have probable cause to arrest defendant for violation of section 843.02

when defendant was yelling street term "ninety nine" which means police were in the area

while undercover officers were attempting drug bust of drug dealer); D.G., 661 So.2d at

76 (finding juvenile's verbal protests and refusal to answer officer's questions,

unaccompanied by physical opposition or threats, did not constitute obstruction).

Clark had no basis to detain or arrest Plaintiffs.[1]  It was clearly established in 2007

that an officer in this country cannot arrest someone for asking a question.  It was clearly

due to Plaintiffs' words that Clark felt compelled to handcuff them.  Clark possessed no

arguable probable cause to believe Plaintiffs had committed a crime.  He is not entitled to

immunity.

## VI.  PLAINTIFFS STATE A CLAIM UNDER MONELL

One way to hold the City liable under § 1983 is for the Plaintiffs to plead that it

had in place a policy or custom which violated their rights.  Buckner v. Toro, 116 F.3d

450,  451 (11th Cir. 1997)(citing Monell v. Department of Social Servs. of New York, 436

---

[1]       Eloy v. Guillot, 2008 WL 2697211 (11th Cir. 2008) is also instructive. In Eloy, the
Eleventh Circuit found that under the plaintiff's version of the facts, plaintiff had done nothing to
give the officer probable cause to arrest him.  Id. at *3.  He was not drinking, did not possess
crack cocaine and did not resist arrest.  Id.  The officer "intentionally lied in the arrest affidavits
and fabricated evidence because [the officer] and/or his supervisor wanted to arrest Eloy . . .."
Id.  Therefore, the Court concluded, the plaintiff's version of the facts established a warrantless
arrest without probable cause and thus a Fourth Amendment violation.  Id.  See also Franks v.
Delaware, 438 U.S. 154 (1978)(held that an officer violates the Fourth Amendment when he
swears to false information knowingly or with reckless disregard for the truth where that false
information is material to the finding of probable cause).

U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)).  Other ways to hold governmental

defendants liable under §1983 are for Plaintiffs to establish that  Defendant's final

policymaker(s) acted with deliberate indifference to a constitutional right; Defendant's

final policymaker(s) delegated authority to a subordinate who, in turn, caused a

constitutional deprivation; or Defendant's final policymakers ratified a constitutionally

impermissible decision or recommendation of a subordinate employee.  Sherrod v. Palm

Beach County School District, 424 F.Supp.2d 1341, 1344 (S.D. Fla. 2006).

      In arguing for dismissal, the City overlooks or ignores Plaintiff's allegations that

"[b]ased on its similar past conduct, Defendant TPD engages in a custom or practice of

unlawful excessive force and arrest or continued detention without arguable probable

cause." [Amended Complaint, ¶13].  Plaintiffs further claim that the City perpetuated a

policy of inadequate training in ¶s 34-36 of their Amended Complaint.  That Defendant's

deficient training caused these constitutional deprivations is supported by the allegation

that it engaged in similar past violations.  Plaintiffs also alleged that the City's final

policymaker ratified the unconstitutional conduct with its failure to investigate or

discipline Clark in paragraph 34 of their Amended Complaint.  These allegations are

sufficient to constitute governmental liability.  See Battista v. Cannon, 934 F. Supp. 400

(M.D. Fla. 1996)(allegations that the Sheriff of Pasco County had de facto policies, as

well as customs, which were the moving force behind the constitutional deprivations, and

an alleged failure of the Sheriff to investigate, supervise or discipline the deputy could be

sufficient to impose liability); Stoker v. Smith, 1999 WL 224579 (M.D. Fla. 1999)

(quoting <u>Leatherman v. Tarrant County</u>, 507 U.S. 163, 165 (1983)("a claim of municipal liability under section 1983 is sufficient to withstand a motion to dismiss even if the claim is based on nothing more than bare allegation that the individual officers' conduct conformed to official policy, custom or practice.")); <u>Karim-Panahi v. Los Angeles Police Dept.</u>, 839 F. 2d 621, 624 (9th Cir. 1988)("[A] claim of municipal liability under section 1983 is sufficient to withstand a motion to dismiss even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom or practice")(internal quotation marks omitted).

Cities will rarely have in place express policies of inadequate training or excessive use of force. <u>See</u> <u>Owaki v. City of Miami</u>, 491 F.Supp.2d 1140, 1158 (S.D. Fla. 2007). For that reason, Plaintiffs will need to prove, for instance, that the City knew of a need to train Clark or its officers and made a deliberate choice not to. <u>Id.</u> Plaintiffs are entitled to discover facts to prove the City engaged in an unconstitutional custom of false arrest and inadequate training, which they allege.[2] For all these reasons, accepting these allegations as true, Plaintiffs have stated plausible facts entitling them to relief.

As a note, the City posits several arguments that are not relevant to the Court's inquiry on this Motion to Dismiss, such as its argument that Plaintiffs cannot show that its policy of inadequate training was "closely related" to their injuries or that it had no

---

[2]    Plaintiffs can establish official "policy" by showing an unofficial custom or practice of the City, shown through repeated acts, caused the constitutional deprivation. <u>Grech v. Clayton County</u>, 335 F.3d 1326, 1329 (11th Cir. 2003).

notice of past widespread abuse. [Defendant's Motion (Doc. 9), pg. 14].  This is an
argument for summary judgment, not a Motion to Dismiss.

　　　　As set forth in the Plaintiffs' Amended Complaint, there was no probable cause
for their arrest nor any grounds for force, at all.  Under these facts, particularly in
paragraph 13 of the Amended Complaint in which Plaintiffs pled that TPD engaged in a
custom or practice of unlawful excessive force and arrest or continued detention without
arguable probable cause and that TPD ratified the unconstitutional actions of Clark, and
that Clark acted consistently with TPD's policies in falsely arresting and using excessive
force against Plaintiff, Plaintiffs have met their pleading burden particularly on a
"ratification" theory of liability.

　　　　TPD is liable under § 1983 "when execution of a government's policy or custom,
whether made by its lawmakers or by those whose edicts or acts may fairly be said to
represent official policy, inflicts the injury . . .." Monell v. Department of Social
Services, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037-38, 56 L. Ed. 2d 611 (1978).  "One
method of attributing conduct to the municipality is for plaintiff to show that the policy
maker was aware of the subordinates' unconstitutional actions and consciously chose to
ignore them."  Amnesty Am. v. Town of West Hartford, 361 F.3d 113, 126 (2d Cir.
2005) (citing Sorlucco v. New York Cit Police Dep't., 971 F.2d 864, 870-71 (2d Cir.
1992)(stating that municipal liability lies where the subordinate's misconduct is "so
manifest as to imply the constructive acquiescence of senior policy-making officials").
Where a policy-making official exhibits deliberate indifference to constitutional

11

deprivations caused by subordinates, such that the official's inaction constitutes a "deliberate choice," that acquiescence may "be properly thought of as a city 'policy or custom' that is actionable under § 1983." City of Canton, Ohio v. Harris, 489 U.S. 378, 388, 109 S.Ct.1197, 103 L.Ed.2d 412 (1989); see also Vann v. City of New York, 72 F.3d 1040, 1049 (2d Cir. 1995), Jeffes v. Barnes, 208 F.3d 49, 63 (2d Cir. 2000)(holding that sheriff's acquiescence in unconstitutional retaliation could be inferred from his tolerance of harassment of plaintiffs).

A municipality may be held liable under § 1983 where the responsible law enforcement officer has "ratified" unconstitutional conduct by failing to investigate a citizen's complaints of constitutional violations. See Kimbrough v. City of Cocoa, 2006 WL 3335066, * 7 (M.D. Fla. 2007) (citing Marchese v Lucas, 758 F.2d 181, 187-88 (6th Cir. 1985)(court regarded the "official policy" of the sheriff and the county as ratification of an assault by officers upon a prisoner where sheriff did not engender *serious* investigation to discover the perpetrators or official sanction against their conduct)).

Thus, under the ratification theory, a police department's failure to investigate may be indicative of an official policy. Put another way, failing to investigate a claim of constitutional violations may permit an inference that the misconduct which injured the plaintiff was pursuant to an official policy or custom. See Bordanaro v. McLeod, 871 F.2d 1151, 1166-1167 (1st Cir. 1989); see also Kimbrough, 2006 WL 3335066, * 7-8 (fact that the City failed to conduct further investigations or discipline any of its officers can support a claim of ratification); Watkins v. City of Oakland, California, 145 F.3d 1087

12

(9th Cir. 1998)(Chief of Police held individually liable on a supervisory theory of liability

for ratifying police officer's alleged use of excessive force when he dismissed complaint

against the officer despite evidence of constitutional violation); <u>Larez v . City of Los

Angeles</u>, 946 F.2d 630, 645 (9th Cir. 1991)(upheld a jury verdict finding police chief

liable for ratifying the excessive use of force by officers under his command by signing a

letter denying citizen's complaint when expert testimony showed that he should have

disciplined the officers); <u>St. Louis v. Praprotnik</u>, 485 U.S. 112, 127, 108 S. Ct. 915, 99

L.Ed.2d 107 (U.S. 1988)(". . . when a subordinate's decision is subject to review by the

municipality's authorized policymakers, they have retained the authority to measure the

official's conduct for conformance with *their* policies. If the authorized policymakers

approve a subordinate's decision and the basis for it, their ratification would be

chargeable to the municipality. . ..")[3]

    In the instant case, at the very least, Plaintiffs allege that the City did not conduct

any investigation and, in essence, confirmed that Clark acted consistently with City policy

in arresting/detaining Plaintiffs without probable cause and in his use of excessive force

against them.  The Eleventh Circuit has explicitly recognized and approved the

ratification method of proving official capacity claims under § 1983 in <u>Mandel v. Doe</u>,

888 F. 2d 783 (11th Cir. 1989).  In <u>Mandel</u>, the defendant argued that the plaintiff had

---

[3]        Policy or custom can also be established based on a personnel decision.  <u>See
Parker v. Williams</u>, 862 F. 2d 1471 (11th Cir. 1989), *overruled on other grounds by* <u>Turquitt v.
Jefferson County, Ala</u>, 137 F. 3d 1285 (11th Cir. 1998); <u>see also</u> <u>Mandel v. Doe</u>, 888 F. 2d 783
(11th Cir. 1989).

failed to prove a custom or policy by showing a pattern of unconstitutional acts.  Id. at

791.  The Court rejected the defendant's argument by pointing out that the plaintiff had

proceeded on an altogether different method of proving custom or policy: "the delegation

of final policymaking authority from one official to another and the ratification of a

subordinate's actions by a final policymaker."  Id. (citing  City of Oklahoma v. Tuttle,

471 U.S. 808, 834, 105 S.Ct. 2427, 2441, 85 L.Ed.2d 791 (1985)(Brennan, J., concurring

in part and concurring in the judgment)("there may be many ways of proving the

existence of a municipal policy or custom that can cause a deprivation of a constitutional

right.").  The court in Mandel also discussed a number of Supreme Court cases in which

alternative theories were addressed holding local governments liable under § 1983 for a

single decision by a government policymaker.

        For example, in Pembaur v. City of Cincinatti, 475 U.S. 469 , 106 S.Ct. 1292, 89

L.Ed.2d 452 (1986), the court upheld a finding of municipal liability based on a single

decision by a municipal policymaker.  And in City of St. Louis v. Praprotnik, 485 U.S.

112, 108 S. Ct. 915, 99 L.Ed.2d 107 (1988), in an effort to clarify when a decision on a

single occasion may be enough to establish an unconstitutional municipal policy, the

Court reasoned that "[i]f the authorized policymakers approve a subordinate's decision

and the basis for it, their ratification would be chargeable to the municipality . . ."  485

U.S. at ----, 108 S. Ct. at 926.

        Based on Praprotnik and Pembaur, "municipal liability may attach to a single

decision made by a municipal official if that municipal official is the final policymaker

for the municipality with respect to the subject matter in question." <u>Mandel</u>, 888 F.2d at 793. In <u>Mandel</u>, the court found that a physician's assistant was the final policymaker for the defendant with respect to the medical affairs of a road prison. <u>Id.</u> at 794.   Because he had been delegated this final policymaking authority, his acts of deliberate indifference could be attributed to the defendant so as to establish municipal liability. <u>Id.</u>  Liability was found in <u>Mandel</u> even though there was only one incident to support the existence of a governmental policy or custom **<u>because</u>** of the delegation of final policymaking authority from one official to another and the ratification of a subordinate's action by a final policymaker. <u>Id.</u> at 791. Thus, despite Defendant City's assertion to the contrary, a single instance of deliberate indifference to subordinates' actions can provide a basis for municipal liability. <u>See</u> <u>Mandel</u>, 888 F.2d at 791.

In <u>Kimbrough</u>, the Court found that the City's failure to investigate or to discipline the conduct of its officers could support a claim of ratification.  2006 WL 3335066 at *8.  The Court held that the fact that no one was investigated nor reprimanded could be found to be evidence that the City sanctioned the officer's conduct and the reasons behind their actions. <u>Id.</u>  In <u>Marchese v. Lucas</u>, 758 F. 2d 181, 188 (6th Cir. 1985), the court concluded that where, after an assault on a prisoner, there was no serious investigation to discover the perpetrators or official sanctions against their conduct, there was ratification of the illegal acts by the Sheriff.  And in <u>Amnesty Am. v. Town of West Hartford</u>, 361 F. 3d at 126-27, the could held that because a single action on the part of a

policymaker was sufficient to create a municipal policy, then a "single instance of

deliberate indifference to subordinates' actions can provide a basis for municipal liability.

## VII.  CONCLUSION

Plaintiffs have sufficiently met their pleading obligation and Defendants' Motion

should be denied in all respects.

Respectfully submitted,


/s/ Marie A. Mattox
Marie A. Mattox [FBN 0739685]
MARIE A.  MATTOX, P.A.
310 East Bradford Road
Tallahassee, FL 32303
Telephone: (850) 383-4800
Facsimile:  (850) 383-4801

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been furnished by CM/ECF
service only to all counsel of record this 12th day of September, 2011.


/s/ Marie A. Mattox
Marie A. Mattox

16