IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION


JOSHUA J. RUFFIN and
QUENTEZ R. RUFFIN,

      Plaintiffs,

vs.                                        CASE NO.: 4:11cv00344-RH-CAS

CITY OF TALLAHASSEE, DOUGLAS
CLARK, individually, and IPC
INTERNATIONAL CORPORATION,

      Defendants.
_____/


**DOUGLAS CLARK AND THE CITY OF
TALLAHASSEE'S REPLY TO PLAINTIFFS'
RESPONSE TO MOTION FOR SUMMARY JUDGMENT**

Defendants, Douglas Clark (Officer Clark) and the City of Tallahassee (the

City), by and through undersigned counsel, hereby file their reply to plaintiffs'

response (Doc. 57) to motion for summary judgment and memorandum of law in

support thereof (Docs 39 and 40 respectively) and state as follows:

**I.    OFFICER CLARK HAD REASONABLE SUSPICION TO DETAIN
PLAINTIFFS**

Plaintiffs do not dispute that when Officer Clark stopped them as they were

walking in the parking lot they knew that Officer Clark was a police officer.  They

do not dispute that Officer Clark had been told by Tallahassee Mall Security that

four suspects had engaged in disorderly conduct and that one of those suspects had pulled down his pants and exposed his buttocks.  Instead, plaintiffs misstated Officer Clark's deposition testimony by stating that he "was unable to recall why IPC employees had called him on the radio."[1]  What Officer Clark actually said was: "I don't recall **exactly** what I heard on the radio. I've generally told you to the best of my recollection what I remember and what I was told and that's referring to my reports as..."[2]  Although not a part of plaintiff's Exhibit 51, previous to the misstated portion of Officer Clark's deposition testimony he had testified that Mall security had contacted him by radio seeking law enforcement assistance and had given him "a brief description of the disorderly conduct:  Being loud, profane, jumping around, things of that nature."[3] Moreover, Officer Clark later testified that the generic description that he was given and could recall, based on his written report was that "loud profane behavior,"  "jumping around" and "that one of them had pulled their pants down and exposed their buttocks."[4]

It is thus indisputable that prior to Officer Clark stopping and detaining plaintiffs that he was advised by Mall Security by radio that four suspects had engaged in disorderly conduct, including a report that one of them had pulled his pants down and exposed his buttocks.

---

[1]  Doc. 57 at p. 3.
[2]  Plaintiffs' Exhibit 51 (Doc. 53-3 at pp. 19 and 20).
[3]  See Officer's Clark's deposition transcript at p. 64, attached hereto as Exhibit A.
[4]  Doc. 53-3 at pp. 72-73.

Plaintiffs have not, and in fact cannot, present a credible argument that

Officer Clark did not have articulable reasonable suspicion to detain plaintiffs to

investigate whether the misdemeanor crime of disorderly conduct had been

committed and if so, what action he should take.  Instead plaintiffs go off on a

tangent about whether Officer Clark had probable cause, or arguable probable

cause to detain or arrest plaintiffs.  Probable cause was not required to detain

plaintiffs on July 28, 2007; all that was required was that Officer Clark have a

reasonable suspicion that a crime had been committed.[5]

While it is clear that Officer Clark had actual reasonable suspicion to detain

plaintiffs, Officer Clark also would show to the Court that he undoubtedly had

**arguable** reasonable suspicion for such detention, which is all that is required for

qualified immunity to be applicable to the detaining officer.[6]

## II.     OFFICE CLARK HAD AT LEAST ARGUABLE PROBABLE CAUSE TO ARREST QUENTEZ RUFFIN

It remains undisputed that Joshua Ruffin was never arrested on July 28, 2007

for any reason.  Quentez Ruffin was arrested (and not taken to jail, but given a

Notice to Appear) for resisting without violence and possession of paraphernalia,

both of which took place in Officer Clark's presence. It is undisputed that Quentez

Ruffin was told multiple times to get on the ground, but that he failed to

---

[5]     Terry v. Ohio, 392 U.S. 1 (1968); Fla. Stat. Ann. § 901.151(2).
[6]     Jackson v. Sauls, 206 F.3d 1156, 1165-66 (11th Cir. 2000).

immediately do so and that Officer Clark told him that he wanted to pat him down

and that he refused to allow such a pat down; thus at worst, Officer Clark had at

least arguable probable cause to arrest Quentez Ruffin for resisting without

violence.  Arguable probable cause is an absolute defense to a civil claim of false

arrest/imprisonment.[7]

## III.   THE FORCE USED BY OFFICER CLARK ON QUENTEZ RUFFIN WAS OBJECTIVELY REASONABLE

The issue here is whether as a matter of law it was objectively unreasonable

to use a Taser twice on a suspect who has been given multiple commands to get on

the ground but refused to do so.

The use of a Taser should be analyzed like any other use of force. Thus the

Court should consider factors such as the severity of the crime, the immediate

threat to the officer, the number of times the Taser was deployed, any injury

sustained by the individual and whether the individual was warned of the potential

use of the Taser.[8]

In making this analysis the Court should keep in mind that there are four

critical facts that remain undisputed as to the whether the force used by Officer

Clark on Quentez Ruffin was objectively reasonable: (1) when Officer Clark tried

---

[7]      Marx v. Gumbinner, 905 F.2d 1503, 1505-06 (11th Cir. 1990).

[8]      Draper v. Reynolds, 369 F.3d 1270, 1278 (11th Cir.2004) (holding single use of a Taser gun was reasonably proportionate where suspect was hostile, belligerent, and uncooperative, under the Fourth Amendment objective reasonableness standard); Buckley v. Haddock, 282 Fed. Appx. 791 (11th Cir. 2008) (finding no excessive force under the Fourth Amendment where officer used a Taser shock three times on a suspect who was handcuffed and merely sitting by the side of the road but was resisting arrest by refusing commands to stand up and walk to the patrol car).

to pat Quentez Ruffin down for weapons and his own safety, Quentez Ruffin

pulled away from Officer Clark to keep him from patting him down, which

constitutes active physical resistance;[9] (2) when given multiple commands to get to

the ground and multiple warnings that he would be Tased, Quentez Ruffin did not

immediately do so and instead continued to ask questions;[10] (3) Officer Clark first

applied the Taser in drive stun mode while Quentez Ruffin was either standing or

going to the ground, including the moment when he first got on the ground;[11] and,

(4) Officer Clark used the Taser twice and during the two applications he touch

stunned Quentez Ruffin approximately four times.[12]

Thus, while this incident started out as merely Officer Clark seeking to

detain plaintiffs long enough to investigate whether they had engaged in disorderly

conduct, it quickly and unexpectedly turned into something quite different—an

incident where Officer Clark quickly began to fear that he might be attacked or

lose control of the situation.  Officer Clark faced four suspects, two of which were

much larger than he. Quentez Ruffin was uncooperative and would not allow a pat

down or get on the ground as repeatedly commanded, even after repeated warnings

that he would be Tased.  To gain control and get Quentez Ruffin on the ground,

Officer Clark applied his Taser in the stun gun mode twice and in so doing touch

---

[9]      Doc. 32-4 at ¶ 5.
[10]     Doc. 32-1 at pp. 152, 232-33; Doc. 32-4 at ¶ 6.
[11]     Doc. 57 at p. 4.
[12]     Doc. 32-4 at ¶ 6.

stunned Mr. Ruffin approximately four times. Lastly, there is no evidence of any serious or permanent injury as a result of the Taser applications. In fact, twice applying the Taser may well have prevented a physical struggle and serious harm to either Quentez Ruffin or Officer Clark.

The right to detain/arrest carries with it the right to use some degree of physical coercion.[13]  For claims of excessive force, objective reasonableness is the test, which includes the fact that police officers are often forced to make split-second decisions—in circumstances that are tense, uncertain, and rapidly evolving, about the amount of force that is necessary in a particular situation.[14]

Both Joshua Ruffin and Quentez Ruffin contend that they had pre-existing injuries and that they tried to alert Officer Clark to those injuries.  Officer Clark was not required to credit plaintiffs' verbal statements about their previous surgery and/or injuries.[15] Moreover, the reasonable force used here on both plaintiffs does not become excessive when the force aggravates (however severely) a pre-existing condition the extent of which was unknown to the officer at the time.[16]

---

[13]      Graham v. Conner, 490 U.S. 386, 396 (1989).
[14]      Id. at 396-97.
[15]      Rodriguez v. Farrell, 294 F.3d 1276, 1278 (11th Cir.2002) (A police officer need not credit everything a suspect tells him. This idea is especially true when the officer is in the process of trying to handcuff a suspect).
[16]      McCullough v. Antolini, 559 F.3d 1201, 1200 (11th Cir.2009).

**IV.   QUENTEZ RUFFIN HAS NOT SHOWN THAT IT WAS CLEARLY ESTABLISHED THAT TWO APPLICATIONS OF A TASER CONSTITUTED THE UNLAWFUL USE OF FORCE**

The existing law at the time of this July 2007 incident did not put Officer Clark on notice that two deployments of his Taser to subdue the noncompliant Quentez Ruffin, under tense and uncertain circumstances, constituted the use of excessive force.  It is well established that only Supreme Court cases, Eleventh Circuit case law, and Florida Supreme Court case law can clearly establish law in this circuit.[17] Here, Quentez Ruffin has provided no such authority showing that Officer Clark was put on fair notice that his conduct violated clearly established Fourth Amendment standards.

Officer Clark's and the City's motion for summary judgment as to plaintiffs' claims against them should be granted and judgment entered in their favor and against plaintiffs.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been

---

[17]   <u>Thomas ex rel. Thomas v. Roberts</u>, 323 F.3d 950, 955 (11th Cir. 2003).

furnished by electronic mail via CM/ECF to Marie A. Mattox, Esq., and Ganesh

Chatani, Esq. on this 11th day of May 2012.

> *s/ Billy J. Hendrix*
> BILLY J. HENDRIX
> Assistant City Attorney
> FBN:  849529
> Assistant City Attorney
> City Attorney's Office
> 300 South Adams Street, Box A-5
> Tallahassee, FL 32301
> (850) 891-8554
> Fax: (850) 891-8973
> Billy.Hendrix@talgov.com
> ATTORNEYS FOR DOUGLAS CLARK
> AND THE CITY OF TALLAHASSEE